IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CHRISTOPHER M. MCCARTNEY,**     Case No. 3:18 CV 538

    Plaintiff,

    v.     Magistrate Judge James R. Knepp, II

**MARTEN TRANSPORT LTD.,**

    Defendant.     MEMORANDUM OPINION AND ORDER

## INTRODUCTION

This is a state-law wrongful discharge case removed to this Court from the Hancock County Common Pleas Court on the basis of diversity jurisdiction. *See* Doc. 1. Currently pending before the Court is Defendant Marten Transport, Ltd.'s Motion to Dismiss First Amended Complaint (Doc. 12), to which Plaintiff Christopher M. McCartney filed an Opposition (Doc. 17), and Defendant filed a Reply (Doc. 18). For the reasons stated below, Defendant's motion is granted.

## BACKGROUND

For purposes of a motion to dismiss, the Court accepts the allegations in a complaint as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Plaintiff was employed by Defendant as a truck driver from August 1, 2016, through June 1, 2017. (Doc. 9, at 1). When hired, Plaintiff received a policy manual from Defendant, which included a policy stating threatening remarks will result in discipline. *Id.* at 2.

In April 2017, Plaintiff's co-worker, Ken Mitchell "began verbally threatening Plaintiff." *Id.* Plaintiff reported these threats to his supervisor, who informed him "the situation would be

taken care of". *Id.* After this initial complaint, Plaintiff continued to experience threats from Mitchell, and continued to report them to his supervisor. *Id.* Mitchell was never reprimanded or disciplined, nor was Defendant's human resources department notified. *Id.*

On May 28, 2017, after another incident with Mitchell, Plaintiff sent a friend/coworker a text message saying "he thought Ken Mitchell wanted a fight and he was going to get a crow bar up side of his head". *Id.* at 3. Plaintiff "intended this latter comment to refer to self-defense in the event of an armed or hostile attack on him by Ken Mitchell." *Id.* Plaintiff also told his friend/coworker that he was frustrated by his supervisor's lack of action despite his requests, and indicated he intended to go to human resources directly. *Id.*

At some point Plaintiff's supervisor contacted him indicating a desire to meet with Plaintiff and Mitchell, but this meeting never occurred. *Id.*

On June 1, 2017, "Plaintiff was informed that he was being discharged for allegedly making threatening comments." *Id.* He asserts his discharge "was motivated by his complaints about his co-worker's threatening and hostile behavior." *Id.* at 5. Mitchell remained employed and was not disciplined or reprimanded. *Id.* at 4.

Plaintiff filed suit in Hancock County Common Pleas Court in February 2018 (Doc. 1-2), and Defendant removed to this Court in March (Doc. 1). Defendant filed a motion to dismiss (Doc. 8), and Plaintiff filed a First Amended Complaint (Doc. 9). In his amended complaint, Plaintiff asserts a single claim for wrongful discharge in violation of public policy. *Id.* at 4. Defendant then filed the pending motion to dismiss the first amended complaint (Doc. 12), to which Plaintiff responded (Doc. 17), and Defendant replied (Doc. 18).

## STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). The court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976).

Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 1556 U.S. at 678).

## DISCUSSION

Defendant moves to dismiss Plaintiff's first amended complaint, contending Plaintiff has not sufficiently pled facts to satisfy the "jeopardy" and "clarity" elements of a wrongful discharge claim based on the violation of Ohio public policy. (Doc. 12). Plaintiff responds that he has alleged

3

sufficient facts and the motion should be denied. (Doc. 17). For the reasons discussed below, the undersigned grants Defendant's motion to dismiss.

Elements of Wrongful Discharge

The traditional rule in Ohio is that at-will employment may be terminated by the employer at any time for good cause, bad cause, or no cause at all, and therefore, discharge of an employee does not give rise to an action for damages. *Phung v. Waste Mgt., Inc.*, 23 Ohio St. 3d 100 (1986). The Ohio Supreme Court recognized an exception to the employment-at-will doctrine that applies when an at-will employee is discharged for reasons that contravene clear public policy expressed by the legislature. *See Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St. 3d 229 (1990); *Painter v. Graley*, 70 Ohio St. 3d 377 (1994). A cause of action for wrongful discharge in violation of public policy in Ohio requires proof of four elements:

1. "That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element)."

2. "That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element)."

3. "The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element)."

4. "The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)."

*Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 242 (Ohio 2002) (quoting *Painter*, 70 Ohio St. 3d at 384). "The clarity and jeopardy elements . . . are issues of law for the court's determination[.]" *Dohme v. Eurand Am., Inc.*, 130 Ohio St. 3d 168, 171 (Ohio 2011).

Jeopardy Element

Defendant first contends Plaintiff has not pled sufficient facts to satisfy the "jeopardy" element of such a claim. Defendant cites the Sixth's Circuit's explanation of the "jeopardy" element in support. In *Jermer v. Siemens Energy & Automation, Inc.*, the Sixth Circuit explained that the jeopardy element requires a court to determine whether it is "sufficiently clear from the employee's statements that he is invoking governmental policy [so] that a reasonable employer would understand that the employee relies on the policy as the basis for his complaint." 395 F.3d 655, 656 (6th Cir. 2005). The court elaborated:

> The question before us is the meaning of the second element, the so-called "jeopardy element." Our interpretation of this gateway element is as follows: although complaining employees do not have to be certain that the employer's conduct is illegal or cite a particular law that the employer has broken, the employee must at least give the employer clear notice that the employee's complaint is connected to a governmental policy. It must be sufficiently clear from the employee's statements that he is invoking governmental policy that a reasonable employer would understand that the employee relies on the policy as the basis for his complaint. Because the employee here never connected his statements about air quality to governmental policy or mentioned or in any way invoked governmental policy as the basis of his complaint, we agree with the district court that his case must be dismissed for the failure to show that his dismissal would "jeopardize" Ohio's public policy.

*Id.* at 656. Plaintiff responds that *Jermer*'s definition of the "jeopardy" element is an incorrect interpretation of Ohio law, has not been adopted by the Supreme Court of Ohio, and should not be applied. (Doc. 17, at 6-10). Plaintiff further asserts that the Ohio Supreme Court's decision in *Sutton v. Tomco Machining, Inc.*, 129 Ohio St. 3d 153 (2011), demonstrates that notification of an injury is sufficient to satisfy the jeopardy element.

Preliminarily, in diversity cases involving state law claims, the court "must apply the law of the state's highest court." *Allied Indus. Scrap, Inc. v. OmniSource Corp.*, 776 F.3d 452, 453 (6th Cir. 2015). "If the state supreme court has not yet addressed the issue presented, [a court] must predict how the court would rule by looking to all available data . . . 'Relevant data include

5

decisions of the state appellate courts, and those decisions should not be disregarded unless [a court is] presented with persuasive data that the [state] Supreme Court would decide otherwise." *Allstate Ins. Co. v. Thrifty Rent-A-Car Systems, Inc.*, 249 F.3d 450, 454 (6th Cir. 2011) (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.,* 65 F.3d 498, 507 (6th Cir. 1995).

Here, Plaintiff is correct that the Ohio Supreme Court has not adopted *Jermer*'s interpretation of the jeopardy element. Three Ohio appellate courts, however, have adopted and relied upon *Jermer*'s construction. *See Beckloff v. Amcor Rigid Plastics USA, LLC*, 93 N.E.3d 329, 340-41 (Ohio Ct. App. 6th Dist. 2017); *Zwiebel v. Plastipak Packaging, Inc.*, 2013 WL 4768768, at *8 (Ohio Ct. App. 3d Dist. 2013); *Gaskins v. Mentor Network-REM*, 2010 WL 3814560, at *4 (Ohio Ct. App. 8th Dist. 2010).[1] These decisions, thus, "should not be disregarded . . . [without] persuasive data" that the Ohio Supreme Court would decide otherwise. *Kingsley Assoc.*, 65 F.3d at 507.

Plaintiff contends that the Ohio Supreme Court's decision in *Sutton*, 129 Ohio St. 3d 153, changed the landscape. The Sixth Circuit, however, has distinguished *Sutton*:

> The dissent would also cast aside *Jermer* based on *Sutton v. Tomco Machining, Inc.*—an Ohio Supreme Court decision that determined an employee satisfied the jeopardy element by notifying his employer about an injury one hour before the employer fired him. 129 Ohio St.3d 153, 950 N.E.2d 938, 946–47 (2011). But *Sutton* is inapposite here because it presented a different issue, namely whether a *Greeley* claim encompasses situations where "an injured employee suffers retaliatory employment action after injury on the job *but before the employee files a workers' compensation claim or institutes, pursues, or testifies in any workers' compensation proceeding*." *Id.* at 941 (emphasis added). Because the remedy

---

1. One Ohio appellate court explicitly rejected "*Jermer*'s implication that an employee must make some formal announcement that his statements are being made for the purpose of protecting the public policy favoring workplace-safety." *Dohme v. Eurand Am., Inc.*, 170 Ohio App. 3d 593, 601 (Ohio Ct. App. 2d Dist. 2007). That decision was, however, vacated by the Ohio Supreme Court on appeal on a different basis, and the court expressly declined to discuss the jeopardy element. *Dohme v. Eurand Am., Inc.*, 130 Ohio St. 3d 168, 174 (Ohio 2011) ("Because the court does not need to reach the issue of whether Eurand America's termination of Dohme jeopardized a public policy, we decline to do so.").

provisions in the Ohio workers' compensation statute could not be accessed by the *Sutton* plaintiff—who, having been fired before filing a workers' compensation claim, was not an eligible claimant under the statute—the court held the jeopardy element was satisfied. *Id.* at 947. That test for the jeopardy element has no application here, however, as O'Connor was fired *only after she filed a workers' compensation claim* and after she had exhausted her FMLA leave.

*O'Connor v. Nationwide Children's Hosp.*, 723 F. App'x 321, 323–24 (6th Cir. 2018) (emphasis in original). Thus, the question in *Sutton* was whether a plaintiff could access the *Greeley* remedy. The *O'Connor* panel affirmed the district court's dismissal of the plaintiff's claims because "[s]he pleads no facts indicating that she gave [her employer] 'clear notice' of her intent to vindicate a governmental policy favoring workplace safety vis-à-vis her workers compensation claim." 723 F. App'x at 323. And *Sutton* is similarly inapposite here as Plaintiff's case does not involve an injury separate and apart from his firing, and thus no workers compensation claim.

Additionally, as further evidence that *Sutton* did not change the landscape, two of the above three Ohio appellate court cases applying the *Jermer* jeopardy definition post-date *Sutton*. *See Beckloff*, 93 N.E.3d at 341 ("There is no evidence that [plaintiff] put [defendant] on notice that he was attempting to invoke a governmental policy and not simply his own self interest.") (decided in 2017); *Zwiebel*, 2013 WL 4768768, at *8 ("The fundamental purpose of a *Greeley* claim is to protect employees who seek to vindicate an important governmental policy; the claim does not exist to vindicate an employee's personal interest.") (decided in 2013). Thus the Ohio appellate courts have not interpreted *Sutton* as a change, a strong indication that federal courts interpreting Ohio law should not either. Federal courts have similarly continued to apply *Jermer. See, e.g., Harmon v. Johnson Controls Inc.*, 2016 WL 54650, at *2 (N.D. Ohio); *Nyarkoh-Ocran v. Home Depot, USA, Inc.*, 2014 WL 5305544, at *9 (S.D. Ohio); *Hale v. Mercy Health Partners*, 20 F. Supp. 3d 620, 642 (S.D. Ohio); *Hernandez v. Pitt Ohio Exp., LLC*, 2012 WL 3496860, at *3 (N.D Ohio).

7

Plaintiff's argument regarding *Lightner v. CB&I Constructors, Inc.*, 2016 WL 6693548 (S.D. Ohio.) is similarly not well-taken. *Lightner* addressed a different question—whether a *Greeley* claim was available to the plaintiff because the defendant asserted that OSHA provided a sufficient remedy. 2016 WL 6693548, at *9 ("The provision of adequate remedies in the statute giving rise to a claim for wrongful termination renders the wrongful-termination claim unviable as to the jeopardy element of a court's analysis."). *Lightner* did not address the *Jermer* jeopardy construction at all.

Having concluded that *Jermer*'s construction of the jeopardy element applies, the undersigned finds Plaintiff has failed to plead sufficient facts to establish that element. Plaintiff asserts he was "verbally threaten[ed]" by Mitchell, and reported those threats to his supervisor. (Doc. 9, at 2). After further threats, "Plaintiff continued to protest and complain to his supervisor . . . however, Plaintiff's supervisor either neglected to or was incapable of restraining the persistent threats and repeated abuse by Plaintiff's co-worker." *Id.* Plaintiff also "indicated to his friend/co-worker that Plaintiff had begged and pleaded with his supervisor to do something to alleviate the abuse he was experiencing[.]" *Id.* at 3. Taking these statements as true, it is still not "sufficiently clear from the employee's statements that he is invoking governmental policy [so] that a reasonable employer would understand that the employee relies on the policy as the basis for his complaint." 395 F.3d at 656.

Specifically, courts have emphasized that statements of concern for personal safety are not the same as an indication Plaintiff "was invoking a governmental policy in favor of workplace safety." *Jermer*, 395 F.3d at 659 (raising concerns about air quality issues by pointing to own health issues and co-worker's cough did not indicate plaintiff's was invoking a governmental policy); *see also Acker v. New York & Co*, 364 F. Supp. 2d 661, 665 (N.D. Ohio 2005) (store

8

manager's expression of concern about personal safety about shoplifting policy insufficient to satisfy jeopardy element); *Hernandez*, 2012 WL 3496860, at *3 (complaints that it was "too hot and that the conditions were unsafe as a result" insufficient to satisfy jeopardy element); *Harmon*, 2016 WL 54650, at *3 (complaints about co-worker's threatening conduct insufficient to satisfy jeopardy element).

Having concluded that Plaintiff has not pled sufficient facts to establish the jeopardy element of a wrongful discharge in violation of public policy claim, the undersigned grants Defendant's motion to dismiss.[2]

Certification

At the end of his opposition, Plaintiff states: "Perhaps this case would benefit from certification to the Ohio Supreme Court for a definitive determination on whether the stringent standard from *Jermer* applies." (Doc. 17, at 10). Defendant responds that Plaintiff's "off-handed remark" is not in compliance with Local Civil Rule 7.1 which requires a motion to be made in writing and to include a brief in support, nor does it set forth a specific question he wants the Ohio Supreme Court to answer. (Doc. 18, at 9). Through certifying questions to the state Supreme Court, a district court "faced with a novel state-law question [may] put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of an authoritative response." *Jones v. Coleman*, 848 F.3d 744, 750 (6th Cir. 2017) (internal quotations omitted). The decision to certify a question to a state supreme court "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). "The mere difficulty in ascertaining local law provides an insufficient basis for certification." *Duryee v. U.S. Dep't of* Treasury, 6 F.

---

2. The undersigned therefore finds it unnecessary to reach the parties' arguments regarding the clarity element of such a claim.

Supp. 2d 700, 704 (S.D. Ohio 1995) (citing *Transcontinental Gas Pipeline Corp. v. Transp. Ins. Co.*¸958 F.2d 622 (5th Cir. 1992)). Even assuming Plaintiff's conclusory comment can be construed as a motion for certification, the undersigned denies the request. As set forth in the above discussion, the undersigned finds the law sufficiently clear that the issue presented can be appropriately resolved.

## CONCLUSION

Following review, and for the reasons stated above Defendant's motion to dismiss Plaintiff's first amended complaint (Doc. 12) is GRANTED.

 s/James R. Knepp II
United States Magistrate Judge